**In The United States District Court
For The Middle District of Florida
Tampa Division**

| | |
|---|---|
| Commodity Futures Trading Commission, | Civil Action No: 8:07-cv-01658-MAP |
| Plaintiff, | |
| v. | Judge: Hon. Richard A. Lazzara |
| Edward Evors, Bally Lines Ltd. and GPS Fund Ltd., | Magistrate Judge: Mark A. Pizzo |
| Defendants. | |

**CONSENT PERMANENT INJUNCTION AND OTHER
EQUITABLE RELIEF AGAINST DEFENDANT EDWARD EVORS**

On September 17, 2007, Plaintiff, Commodity Futures Trading Commission ("CFTC" or "Commission"), filed a Complaint against Defendants Edward Evors ("Evors" or "Defendant"), Bally Lines Ltd. and GPS Fund Ltd. seeking injunctive and other equitable relief for violations of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C §§ 1 et seq. (2002).

**I. CONSENT AND AGREEMENT**

To effect settlement of the matters alleged in the Complaint against Evors, without a trial on the merits or any further judicial proceedings, Defendant:

1.  Consents to the entry of this Consent Order of Permanent Injunction and Other Equitable Relief ("Order").

2.  Affirms that he has agreed to this Order voluntarily, and that no promise or threat has been made by the CFTC or any member, officer, agent or representative

thereof, or by any other person, to induce consent to this Order, other than as set forth specifically herein.

3. Acknowledges service of the Summons and the Complaint.

4. Admits the jurisdiction of this Court over him, admits that the Court has subject matter jurisdiction over this action, and admits that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002).

5. Waives:

(a) all claims that he may possess under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504 (2000), and 28 U.S.C. § 2412 (2000), and/or Part 148 of the Commission's Regulations, 17 C.F.R. §§ 148.1, et seq. (2007), relating to, or arising from, this action;

(b) all claims that he may possess under the Small Business Regulatory Enforcement Act, Pub. L. 104-121, Subtitle B, Section 223, 110 Stat. 862-63 (March 29, 1996), relating to, or arising from, this action;

(c) any claim of double jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and

(d) all rights of appeal in this action.

6. Agrees that no provision of this Order shall in any way limit or impair the ability of any person to seek any legal or equitable remedy against Evors in any other proceeding.

7. Neither admits nor denies the allegations of the Complaint or the findings of fact and conclusions of law contained in this Order except as to jurisdiction and venue, which he admits;

8. Defendant does not consent to the use of the Complaint or the findings of fact or conclusions of law in this Order, as the sole basis for any other proceeding brought by the Commission, other than a proceeding in bankruptcy relating to Defendant, a Commission registration proceeding relating to Defendant, or to enforce the terms of this Order. Solely with respect to any bankruptcy proceeding relating to Defendant, a Commission registration proceeding relating to Defendant and/or any proceeding to enforce the terms of this Order, Defendant agrees that the allegations of the Complaint and all of the findings of fact and conclusions of law in this Order shall be taken as true and correct and be given preclusive effect, without further proof.

9. Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by Part V.D.2 of this Order, of any bankruptcy proceeding filed by, on behalf of, or against him.

10. Agrees that neither he nor any of his agents, employees, representatives or attorneys acting under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or findings of fact or conclusions of law in this Order, or creating, or tending to create, the impression that the Complaint or this Order is without a factual basis; provided, however, that nothing in this provision shall affect Evors': i) testimonial obligations; or ii) rights to take legal positions in other proceedings to which the CFTC is not a party. Evors shall take all necessary steps to ensure that all of his agents, employees, representatives and attorneys

understand and comply with this agreement.

11. Consents to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Order and for any other purposes relevant to this action, even if Defendant now or in the future resides outside this jurisdiction.

## II. FINDINGS FACT

The Court makes the following findings of fact:

1. In or around July 2004, Evors solicited Fred Bischoff ("Bischoff") to invest $100,000 to trade commodity interests with a company named Tech Traders Inc. ("Tech Traders"), even though Evors knew at the time that Tech Traders had ceased operations approximately four months earlier as a result of an enforcement action by the CFTC.

2. Evors told Bischoff that Bally Lines was a company he operated and that the funds he was collecting from Bischoff and others would be deposited with Bally Lines, which would then invest the funds with Tech Traders.

3. Evors told Bischoff he had been paying other investors a profit of 6% per quarter and that he would pay Bischoff 6% per quarter based on profits generated from Tech Traders' trading of commodity interests. According to Evors, if Tech Traders' trading profits were higher than 6% per quarter, Bischoff's profits could be greater.

4. On or about July 14, 2004, Bischoff gave Evors a personal check in the amount of $100,000 payable to Bally Lines. Evors never invested the funds with Tech Traders.

5. Between July 2004 and May 2006, Evors sent Bischoff quarterly account statements that showed Bischoff had an account that maintained a balance of $100,000

and earned profits of 6% per quarter. In fact, the account statements were false because the funds were never invested with Tech Traders and there were no profits.

6. During this period, Evors sent Bischoff quarterly payments totaling approximately $48,000 that were purportedly derived from profits from Tech Traders' trading of commodity interests. In fact, the payments did not come from any Tech Traders' trading profits. Evors made no other payments to Bischoff. Accordingly, Evors owes Bischoff at least $52,000.

7. In or around April 2005, approximately twelve months after Tech Traders ceased operations, Evors solicited Ronald Waldron ("Waldron") to invest $400,000 with Tech Traders to trade commodity interests.

8. Evors guaranteed Waldron a profit of at least 6% per quarter to be generated from Tech Traders' trading profits. Evors told Waldron that if Tech Traders' trading profits exceeded 6% per quarter, Waldron's profits could be greater.

9. Evors told Waldron that GPS was a company he operated and that the funds he was collecting from Waldron and others would be deposited with GPS, which would invest the funds with Tech Traders.

10. On or about April 25, 2005, Waldron wire transferred $250,000 to a GPS bank account identified by Evors. On or about May 11, 2005, Waldron wire transferred an additional $150,000 to the GPS bank account. Evors never invested the funds with Tech Traders.

11. From May 2005 until May 2006, Evors sent Waldron quarterly statements that showed that his account maintained a balance of $400,000 and earned a profit of 6%

per quarter. In fact, the account statements were false because the funds were never invested with Tech Traders, and there were no trading profits.

12. In or around early July 2006, Waldron contacted Evors to request a return of principal on his $400,000 investment. Evors told Waldron he would receive his funds at the end of July. Evors made no payments to Waldron. Accordingly, Evors owes Waldron at least $400,000.

### III. CONCLUSIONS OF LAW

1. From at least July 2004 to September 17, 2007, Evors cheated or defrauded or attempted to cheat or defraud and willfully deceived or attempted to deceive other persons by (1) soliciting investments through fraudulent misrepresentations that customers' funds would be invested with Tech Traders to trade commodity interests, and (2) misappropriating customer funds, in violation of Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii).

2. From at least July 2004 to September 17, 2007, Evors willfully distributed false account statements to customers in violation of Section 4b(a)(2)(ii) of the Act, 7 U.S.C. § 6b(a)(2)(ii).

### IV. ORDER FOR PERMANENT INJUNCTION

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. Evors, in or in connection with any order to make, or the making of any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of any other person, is permanently restrained, enjoined and prohibited from directly or indirectly:

> A. Cheating or defrauding or attempting to cheat or defraud such other person or willfully deceiving or attempting to deceive such other

       persons by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person in violation of Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii); and

    B. Willfully making or causing to be made to such other person an false report or statement thereof, or willfully entering or causing to be entered for such person any false record thereof in violation of Section 4b(a)(2)(ii) of the Act, 7 U.S.C. § 6b(a)(2)(ii).

2. Evors is permanently restrained, enjoined, and prohibited from directly or indirectly engaging in any activity related to trading in any commodity, as that term is defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4) ("commodity interest"), including but not limited to, the following:

    A. Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

    B. Engaging in, controlling, or directing the trading of any commodity interest accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise;

    C. Soliciting or accepting any funds from any person in connection with the purchase or sale of any commodity interest contract;

    D. Placing orders or giving advice or price quotations, or other information in connection with the purchase or sale of commodity interest contracts for himself and others;

    E. Introducing customers to any other person engaged in the business of commodity interest trading;

    F. Issuing statements or reports to others concerning commodity interest trading;

    G. Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. §4.14(a)(9), or acting as a principal, agent, officer or employee of any person registered, required to be registered, or exempted from registration, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9); and

    H. Engaging in any business activities related to commodity interest trading.

 3. The injunctive provision of this Order shall be binding upon Defendants, upon any person who acts in the capacity of officer, agent, employee, attorney, successor and/or assign of Defendant and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as such person is acting in active concert or participation with the Defendant.

## V. ORDER FOR OTHER EQUITABLE RELIEF

IT IS FURTHER ORDERED THAT:

A. <u>Restitution</u>

 1. Evors shall pay restitution in the amount of $452,000, plus post-judgment interest (the "Restitution Obigation").

 2. Post-judgment interest on the Restitution Obligation shall accrue commencing on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

 3. <u>Appointment of Monitor:</u> To effect payment by Evors and the distribution of restitution, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor"). The Monitor shall collect restitution payments from Evors, and make distributions as set forth below. Because the Monitor is not being specially compensated for these services, and these services are outside the normal duties of the Monitor, he shall not be liable for any action or inaction arising from his appointment as Monitor, other than actions involving fraud.

4. Evors shall make his required restitution payments under this Order in the name of "Evors Settlement Fund" and shall send such restitution payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under a cover letter that identifies Evors and the name and docket number of the proceeding. Evors shall simultaneously transmit copies of the cover letter and the form of payment to (a) the Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1152 21st Street, N.W., Washington, D.C. 20581, and (b) the Chief, Office of Cooperative Enforcement, at the same address.

5. The Monitor shall oversee Evors' restitution obligation, and shall have the discretion to determine the manner for distribution of funds in an equitable fashion to Bischoff and Waldron giving consideration to Attachment A attached hereto, or may defer distribution until such time as it may deem appropriate. In the event that the amount of restitution payments to the Monitor are of a de minimis nature such that the Monitor determines that the administrative costs of the making a restitution distribution to Bischoff and Waldron is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part V.B., below.

6. Evors shall execute any documents necessary to release funds that he has in any repository, bank, investment or other financial institution wherever located, in order to make partial or total payment toward his restitution obligation.

7.  Pursuant to Rule 71 of the Federal Rules of Civil Procedure, Bischoff and Waldron are explicitly made intended third-party beneficiaries of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution which has not been paid by Evors.

**B. Civil Monetary Penalty**

1.  Evors shall pay a civil monetary penalty in the amount of $452,000, plus post-judgment interest (the "CMP Obligation").

2.  Post judgment interest shall accrue commencing on the date of entry of this Order and shall be calculated using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

3.  Evors shall pay the CMP Obligation by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made by means other than electronic funds transfer, the payments shall be made payable to the Commodity Futures Trading Commission, and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN: Marie Bateman – AMZ-300
> DOT/FAA/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> Telephone: 405-954-6569

4.  If payment by electronic transfer is chosen, Evors shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions. Evors shall accompany payment of the CMP Obligation with a cover letter that identifies Evors and the name and docket number of

this proceeding. Evors shall simultaneously transmit copies of the cover letter and the form of payment to 1) the Director, Division of Enforcement, Commodity Futures Trading Commission, at the following address: 1155 21st Street, N.W., Washington, D.C. 20581, and 2) the Chief, Office of Cooperative Enforcement, Division of Enforcement, Commodity Futures Trading Commission, at the same address.

### C. Priority of Monetary Penalties and Partial Payments

1. All payments by Evors pursuant to this Order shall first be applied to satisfaction of the Restitution Obligation, consistent with the authority granted the Monitor in Part V.A.5., above. After satisfaction of the Restitution Obligation, payments by Defendant pursuant to this Order shall be applied to satisfy Defendant's CMP Obligation.

2. Any acceptance by the CFTC of partial payment from Evors of Evors's Restitution Obligation and/or CMP Obligation shall not be deemed a waiver of Evors's obligation to make further payments pursuant to this Order, or a waiver of the CFTC's right to seek to compel payment from Evors of any remaining balance.

### D. Miscellaneous Provisions

1. Evors shall notify the CFTC of any federal or state civil or criminal action related to the same activities that are the subject of this action.

2. All notices required by this Order shall identify this matter by caption and shall be sent by certified mail, return receipt requested, as follows:

> Notice to CFTC:
>
> Director, Division of Enforcement
> Commodity Futures Trading Commission
> 1155 21st St. NW
> Washington, DC 20581

11

Notice to Evors:

Edward Evors
720 W. Orient Street
Tampa, Florida 33603

3. In the event that Evors changes his residential or business telephone number(s) and/or address(es) at any time, he shall provide written notice of the new number(s) and/or address (es) to the CFTC within twenty (20) calendar days thereof.

4. This Order incorporates all of the terms and conditions of the settlement among the parties hereto. Nothing shall serve to amend or modify this Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

5. If any provision of this Order or the application of any provisions or circumstances is held invalid, the remainder of the Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

6. The failure of any party to this Order to require performance of any provision of this Order shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Order. No waiver in one or more instances of the breach of any provision contained in this Order shall be construed as a further or continuing waiver of a breach of any other provision of this Order.

7. Upon being served with copies of this Order after entry by the Court, Evors shall sign acknowledgments of such service and serve such acknowledgments on the Court and the Commission within seven (7) calendar days.

8. This Court shall retain jurisdiction of this cause to assure compliance with this Order and for all purposes related to this action, including securing additional funds

or property from third parties for satisfaction of Evors's obligations for restitution and payment of his civil monetary penalty.

**IT IS SO ORDERED**

Dated: July 8, 2008

_____
Hon. Richard A. Lazzara
United Stated District Court Judge

**CONSENTED TO AND APPROVED BY:**

_____
Edward Evors
720 W. Orient Street
Tampa, Florida 33603
**Defendant,** *pro se*

_____
David Terrell
Trial Attorney

COMMODITY FUTURES TRADING COMMISSION
525 West Monroe, Suite 1100
Chicago, IL 60661
(312) 596-0539
(312) 596-0714 (facsimile)
**Attorney for Plaintiff**

U.S. CFTC v. EDWARD J. EVORS, et. al.
MDFL Case No. 8:07-cv-01658-RAL-MAP

Restitution Schedule

| Investor | Aggregate Funds Invested | Total Previous Withdrawals | Total Restitution Owed | Pro Rata Share of Restitution Owed |
|---|---|---|---|---|
| Fred J. Bischoff | $100,000.00 | $48,000.00 | $52,000.00 | 11.50% |
| Ronald Waldron | $400,000.00 | $0.00 | $400,000.00 | 88.50% |
| | $500,000.00 | $48,000.00 | $452,000.00 | 100.00% |

ATTACHMENT A